**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEEPIKA REDDY,**

                                        **Plaintiff,**

        **vs.**                                                    **5:13-cv-00707**
                                                                   **(MAD)**

**LOUIS J. CATONE, in his official capacity as**
**Director of the Office of Professional Discipline,**
**of the New York State Education Department and**
**in his individual capacity; DONALD T. SHERIDAN,**
**in his official capacity as a professional member of the**
**New York State Board of Dentistry and in his**
**individual capacity; ROBERT E. PARKER, DDS,**
**in his individual capacity; RICHARD KONYS, JR.,**
**in his individual capacity,**

                                **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF GILLES R. R. ABITBOL**        **GILLES R. R. ABITBOL, ESQ.**
121 Green Acres Drive
Liverpool, New York 13090
Attorney for Plaintiff

**OFFICE OF THE NEW YORK**               **GREGORY J. RODRIGUEZ, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiff, a dentist licensed to practice in the State of New York, commenced this action

on June 19, 2013.  *See* Dkt. No. 1.  By an Order of this Court dated June 11, 2014, Plaintiff's

original complaint was dismissed without prejudice pursuant to Rule 8 of the Federal Rules of

Civil Procedure for failure to comply with the requirement to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" so that "[e]ach allegation [is] simple, concise, and direct." Dkt. No. 20; Fed. R. Civ. P. 8(a)(2), (d)(1). On June 23, 2014, Plaintiff filed an amended complaint. *See* Dkt. No. 21. Defendants subsequently filed a motion to dismiss, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for Plaintiff's failure to state a claim. *See* Dkt. No. 26. On December 14, 2014, Plaintiff filed a motion to supplement and amend the first amended complaint and submitted a proposed second amended complaint. *See* Dkt. Nos. 30, 30-3. Defendants filed a memorandum of law in opposition to Plaintiff's motion to serve and file a second amended complaint, while also maintaining their Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss. *See* Dkt. No. 31.

Currently before the Court is Defendants' motion to dismiss and Plaintiff's motion to supplement and amend the first amended complaint. *See* Dkt. No. 26; Dkt. No. 30.

## II. BACKGROUND

**A.    Office of Professional Conduct Disciplinary Proceedings**

Plaintiff is a dentist licensed to practice in the State of New York. *See* Dkt. No. 21 at ¶ 1. After attending five years of dental school in her native country of India and practicing there for two years, Plaintiff moved to the United States, whereupon she sat for and passed the National Boards for Dentistry Part I and II. *Id.* From 1998 until 2001, Plaintiff attended New York University, as required by the New York State Dental Act, in order to obtain her license to practice dentistry in the State of New York, as is a requirement for foreign educated dentists. *Id.* After passing the North East Regional Board of Licensing Exam, Plaintiff conducted her general

2

practice residency at St. Joseph's Hospital in Syracuse, New York. *Id.* After completing her

residency, Plaintiff went on to work as a dentist in private practice. *Id.*

In her amended complaint, Plaintiff alleges that between May 1, 2009 and August 2009,

she was interviewed by Investigator Hayduk and Investigator Hoffmeister of the Office of

Professional Discipline ("OPD") concerning four of her patients, MH, MN, GF, and KA. *See id.*

at ¶ 13. On September 18, 2009, Plaintiff received a letter from Carl E. Worboys, an attorney for

the New York State Education Department, notifying her that there was "sufficient evidence of

professional misconduct on [Plaintiff's] part to warrant a disciplinary proceeding pursuant to New

York law." *See* Dkt. No. 21-1 at 2. Pursuant to the letter, Plaintiff was advised that there was a

possibility that a settlement could be reached between her and the State without having to conduct

the formal disciplinary process, and that she had the right to be represented by counsel throughout

the process. *Id.* Plaintiff was also informed that if she was unable to reach a settlement with the

OPD, and if at the end of the Informal Settlement Conference ("ISC") it was determined that she

did in fact commit professional misconduct, Plaintiff's case would be scheduled for a hearing

before a panel of members of the State Board for Dentistry, prior to which she would receive a

notice of hearing and a statement of the charges, permitting her the opportunity to contest the

charges. *Id.* at 2-3. Plaintiff alleges that upon receipt of the September 18, 2009 letter, she

unsuccessfully attempted to contact Mr. Worboys on several occasions over the course of the next

two months. *See* Dkt. No. 21 at ¶ 15.

On January 25, 2010, Plaintiff received a letter from Mr. Worboys indicating to Plaintiff

that if she elected to do so, she was entitled to attend the ISC to discuss any potential resolutions,

scheduled for February 4, 2010, and held in Syracuse, New York. *See* Dkt. No. 21-1 at 5.

Plaintiff attended the ISC on February 4, 2010 with her husband, joined by Defendant Sheridan,

as a member of the applicable board, Mr. Worboys on behalf of the New York State Department of Education, and Defendant Catone, the Director of OPD, acting as the Professional Conduct Officer.  *See* Dkt. No. 21 at ¶¶ 19-20.  At the ISC, Plaintiff was informed by Defendant Sheridan that the alleged misconduct and deviation from professional standards were in regards to her treatment of patients MH, MN, GF, and AG.  *Id.* at ¶ 22.  Plaintiff alleges that she was then presented with the choice of either consenting to a submission of voluntary partial suspension of her license while she returned to dentistry school for an additional two years at the University of Buffalo, or if she did not consent, a formal disciplinary proceeding would ensue.  *See id.* at ¶ 23. At this time, Plaintiff requested the formal hearing and retained counsel.  *Id.* at ¶ 24.

On October 1, 2010, a Notice of Hearing and a verified petition were issued to Plaintiff, from which she was informed that the formal hearing on the issue of summarily suspending her license to practice dentistry was to be scheduled for October 28, 2010.  *See* Dkt. No. 21-1 at 9-35. In the petition, three additional former patients of Plaintiff, JD, KA, and JB, were listed as having received treatment outside of professional standards, which the OPD felt constituted a serious and continuous threat to the public health, safety, and welfare, making it necessary to initiate a summary suspension procedure.  *Id.* at 13-17.  The petition charged Plaintiff with "practicing the profession of dentistry with gross negligence; practicing the profession of dentistry with gross incompetence; practicing the profession of dentistry with negligence on more than one occasion; and with practicing the profession of dentistry with incompetence on more than one occasion," as is defined in Section 6509(2) of the New York Education Law.  *Id.* at 16.  Also attached to the petition were the affidavits of Defendant Parker, Defendant Konys, Robert J. Vitkus, D.D.S., and Eugene West, D.D.S.  *See id.* at 23–35.  These affidavits were submitted in support of the

4

allegations that Plaintiff's treatment of JD, AG, MN, GF, MH, KA, and JB constituted egregious deviations from the acceptable standard of care. *Id.*

After receipt of the petition to summarily suspend her license, Plaintiff and her attorney communicated Plaintiff's wish to enter into a consent order with OPD, which would partially restrict her license, prohibiting her from performing all root canals and all extractions until she completed additional training in those areas, as a means of resolving the matter before it went to a formal disciplinary proceeding. *Id.* at 37; *see* Dkt. No. 21 at ¶ 31. Plaintiff was advised by a letter dated October 21, 2010, by Karen Carlson, Esq., the prosecuting attorney for OPD, that she would be provided with a proposed settlement document the following day, which would need to be signed by Monday, October 25, 2010, in order to waive the summary suspension hearing scheduled for October 28, 2010. *See* Dkt. No. 21-1 at 40. Accordingly, Plaintiff was provided with a proposed consent order the following day, October 22, 2010. *Id.* at 42. Plaintiff signed the first application for consent order on October 25, 2010, which did not include the specific language regarding the additional courses Plaintiff would be required to take at the University of Buffalo. *See* Dkt. No. 21 at ¶ 35. Plaintiff alleges that she then received a call on October 29, 2010, from her attorney informing her that the OPD refused to "drop any of the charges or give the final language on [the] required courses and it was either sign the consent order as is . . . or a full-scale suspension of her license on the following Monday without a hearing" would ensue. *Id.* at ¶ 37. Later that day Plaintiff signed a second application for consent order. *Id.* at ¶ 38. This consent order application was eventually granted by the Board of Regents on November 16, 2010. *See id.*

Under this final consent order, charging Plaintiff with practicing the profession of dentistry with negligence on more than one occasion, Plaintiff agreed not to contest the charges of

professional misconduct, as were set out in the specification attached to her application for consent order. *See* Dkt. No. 21-2 at 13–20. Within the specification, seven specific instances of misconduct were listed, relating to Plaintiff's treatment of patients JD, AG, MN, GF, MH, KA, and JB, on whom she performed either inadequate extractions and/or root canals. *Id.* at 17, 19. By signing the consent order, Plaintiff agreed to a partial suspension of her license in the areas of endodontics and oral surgery, pending her completion of a specific course of retraining in these areas at the University of Buffalo, a $1,000 fine, and a three year probationary period. *See id.* at 13–20. The consent order further stated that, upon her signature, Plaintiff agreed that she was "making this application of [her] own free will and accord and not under duress, compulsion, or restraint of any kind or manner." *Id.* at 15. The New York State Dental Association Council on Ethics issued a decision on April 1, 2011, finding the penalty imposed on Plaintiff under the consent order to be an appropriate and necessary remedy for her professional misconduct. *See id.* at 27-31.

Pursuant to the consent order, Plaintiff attended additional classes in dentistry at the University of Buffalo, specifically classes on oral surgery and endodontics, between June 13, 2011 and June 28, 2011, in satisfaction of her requirement to undergo retraining in those areas, and submitted proof to the Board of Regents of the same. *See id.* at 23, 25. On September 9, 2011, Plaintiff received a letter from the OPD, informing her that based on her satisfactory completion of the retraining courses at the University of Buffalo, the partial suspension of Plaintiff's license had been lifted on September 7, 2011. *Id.* at 33.

**B.    Application for Reconsideration**

After Plaintiff's successful completion of the retraining courses at the University of Buffalo, her payment of the $1,000 fine, and serving one year of the three year probationary

period, on November 8, 2011, Plaintiff wrote a letter addressed to the State Board of Regents, explaining her dissatisfaction with the "unfair and unjust ways of the individualized proceedings" regarding the suspension of her license, and "the improper and malicious conduct of its employees." *See* Dkt. No. 21 at ¶ 49; *see also* Dkt. No. 21-2 at 35-53.  In the letter, Plaintiff explained that her treatment of the seven patients that were identified and discussed in the consent order was necessary because these patients either could not afford to seek the recommended treatment by specialists or refused to seek such treatment.  Dkt. No. 21-2 at 35-53.  Plaintiff also alleged that the allegations of misconduct and the disciplinary proceedings were initiated against her in order to discriminate against her within the profession of dentistry, based on her race and gender. *Id.*

Considering Plaintiff's November 8, 2011 letter to be an application for reconsideration under 8 N.Y.C.R.R. § 3.3(f)(84-85),[1] Defendant Catone addressed a letter to Plaintiff on January 12, 2012, denying her application.  *See* Dkt. No. 21-3 at 2-10.  Defendant Catone, as the Director of OPD, maintained the authority to exercise his discretion in "determin[ing] whether the application warrants referral to the Board of Regents for its determination based upon any of the grounds set forth by the applicant as the basis for the application."  8 N.Y.C.R.R. § 3.3(f); *see also* Dkt. No. 26-1 at 7.  Defendant Catone found that Plaintiff failed to successfully argue that any of the permissible avenues for reconsideration were present, and thus denied reconsideration. *See* Dkt. No. 21-3 at 2-10.

---

[1] Pursuant to 8 N.Y.C.R.R. § 3.3 (f)(84-85), in order for an application for reconsideration to be granted by the Director of OPD, the applicant must show that "the [disciplinary] determination was based on an error of law, or that there is new and material evidence which was not previously available, or that circumstances have occurred subsequent to the original determination which warrant a reconsideration of the measure of discipline."  8 N.Y.C.R.R. § 3.3(f).

**C.      Appellate Court Review**

Thereafter, Plaintiff filed an Article 78 petition pursuant to New York Education Law §

6510(5) with the New York State Supreme Court, Appellate Division, Third Judicial Department,

requesting a review of Defendant Catone's denial of her application for reconsideration.  *Id.* at 13-

16.  After review, the Appellate Division found that Defendant Catone properly denied Plaintiff's

application for reconsideration, finding that Plaintiff failed to establish any viable grounds which

would warrant a referral to the Board of Regents.  *Id.*  The appellate court first noted that

Plaintiff's "assertions of bias and lack of expertise by the doctors who rendered opinions of her

work in connection with the disciplinary investigation go to the adequacy of proof of the

charges," and that Plaintiff "waived the right to contest [these issues] by signing the consent

order."  *Id.* at 15.  Furthermore, the court noted that Plaintiff's argument that she involuntarily

signed the consent order was not viable, as the consent order explicitly stated that "she sought the

consent order of her own free will and without 'duress, compulsion, or restraint of any kind or

manner[,]'" and that she was represented by counsel at the time she signed the consent order.  *Id.*

To the extent that Plaintiff argued that she was coerced into signing the consent order as to avoid

a temporary suspension of her license to practice dentistry, the Appellate Division stated that

"such temporary measures are fully within the power of OPD to employ for the protection of the

public."  *Id.* (citing 8 N.Y.C.R.R. 17.9(a)).  The Appellate Division concluded that

> [u]nfortunately for [Plaintiff], neither her retrospective regret with
> her own decision to enter into the consent order — thereby waiving
> the opportunity to defend herself against the charges and challenge
> the process employed by respondent — nor the negative impact
> of the consent order on her reputation and livelihood, nor her belief
> that the negotiated penalty was excessive provides a legal basis for
> reconsideration.

*Id.* at 16.

**D.    Plaintiff's Federal Court Action**

Plaintiff filed her original complaint with this Court on June 19, 2013.  *See* Dkt. No. 1.

However, on June 11, 2014, Plaintiff's original complaint was dismissed for failure to comply

with Rule 8 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 20.  In Plaintiff's amended

complaint, filed on June 23, 2014, Plaintiff sets forth fourteen causes of action against the

Defendants, in both their official and individual capacities.  *See* Dkt. No. 21.  The basis for

Plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are violations of her Due Process

rights and violations of the Equal Protection Clause.  *See id.*  Plaintiff also asserts claims pursuant

to the stigma plus doctrine, as well as a state tort claim of negligent infliction of emotional

distress.  *See id.*

In regards to Defendant Catone, in her amended complaint Plaintiff alleges that he

violated her due process rights by failing to act as an impartial hearing officer throughout the

disciplinary process and by failing to inform Plaintiff of the charges against her during the ISC

held on February 4, 2010.  *See id.* at ¶¶ 89-99.[2]  In her second cause of action, Plaintiff alleges

that Defendant Catone violated her due process rights and her rights under the Equal Protection

Clause by including in the consent order statements of misconduct relating to three additional

patients not mentioned at the ISC, without such statements being notarized or sworn and thus

leaving Plaintiff without an opportunity to dispute such allegations of professional misconduct.

*Id.* at ¶¶ 100-12.[3]  In Plaintiff's third and fourth causes of action, she asserts that Defendant

---

[2] Plaintiff also alleges in her first cause of action that the sanctions imposed by Defendant Catone in his official capacity throughout the disciplinary process resulted from and were directly related to Plaintiff's national origin and ethnicity.  *See* Dkt. No. 21 at ¶ 98.  As a result, Plaintiff alleges that she was subjected to an "individualized proceeding."  *Id.* at ¶ 99.

[3] Plaintiff alleges in her second cause of action that she was under the impression that the consent order was halting only the summary suspension hearing of her license, and would thus

Catone violated her due process rights and her rights under the Equal Protection Clause by failing to recuse himself from the reconsideration application based on his bias, and that by violating Plaintiff's constitutional rights, Defendant Catone negligently inflicted emotional distress upon Plaintiff.  *See id.* at ¶¶ 113-125.  In her thirteenth cause of action, Plaintiff asserts that Defendant Catone's statements to the *Syracuse Post Standard*, published on December 27, 2010, caused her to suffer under the stigma plus doctrine because "Plaintiff was publicly humiliated and degraded causing irreparable injury to her professional reputation, a liberty protected by the constitution, . . . [and] a loss of business evaluated by Mr. Catone as 80% of her income." *Id.* at ¶ 179.[4]

Turning to Defendant Sheridan, in both his official and individual capacities, Plaintiff asserts in her fifth, sixth, seventh, eighth, and ninth causes of action that Defendant Sheridan violated her due process rights and her rights under the Equal Protection Clause by (1) failing to explain the charges against her and the material facts of those charges;[5] (2) suggesting that Plaintiff should be required to complete two additional years of education as a proposed settlement, which was "derogatory to the arsenal of sanctions at the disposition of the Member of the Board in order to settler the matter," and thus he "inexplicably and unjustifiably deviat[ed]

---

not prohibit her from later disputing the allegations regarding the three additional complaining patients, AG, JD, and JB.  *Id.* at ¶ 111.

[4] Additionally, in Plaintiff's thirteenth cause of action, she asserts that "Mr. Catone's action cause[d] her stigma plus some other negative consequence . . . ." *Id.* at ¶ 180.  It is unclear in Plaintiff's amended complaint what other consequence she is referring to.

[5] Plaintiff contends that Defendant Sheridan had ulterior motives in failing to provide Plaintiff with information regarding the charges brought against her, resulting from the fact that Defendant Sheridan's dentistry practice is in direct competition with Plaintiff's business.  *Id.* at ¶¶ 130-33.  Defendant Sheridan's practice was located within 3.2 miles of Plaintiff's practice and he allegedly "had a financial stake in the demise of Plaintiff." *Id.* at ¶¶ 130-31.

from the applicable sanctions," *id.* at 138; and (3) failing to provide Plaintiff with a formal hearing as she requested at the conclusion of the ISC. *Id.* at ¶¶ 126-54.

In her tenth cause of action, Plaintiff asserts that Defendant Catone and Defendant Sheridan violated her rights under the Equal Protection Clause by subjecting her to "individualized proceedings" based on her ethnicity and national origin, by attempting to require Plaintiff to take a semester-long remedial course in dentistry at the University of Buffalo. *See id.* at ¶¶ 155-62.[6]

In Plaintiff's eleventh cause of action, pursuant to state law, she alleges that Defendants Sheridan, Parker, and Konys negligently inflicted emotional distress upon Plaintiff, causing her permanent injury as well as permanent damage. *Id.* at ¶¶ 163-66.[7] As a result, "Plaintiff has suffered from extreme stress and anxiety resulting in depression and the need to seek psychiatric care [and has since been] diagnosed with post-traumatic stress syndrome (PTSD)." *Id.* at ¶ 166.

Plaintiff's twelfth cause of action pursuant to the stigma plus doctrine asserts that, due to: (1) Defendant Catone's role in the disciplinary proceedings against Plaintiff; (2) Defendant Sheridan's "bad faith and malicious actions and false charges[;]" and (3) Defendant Parker's and Defendant Konys' statements in their affidavits, the publication of the signed consent order

---

[6] Plaintiff argues that semester-long remedial "classes were nonexistent . . . and [such] sanction of semester level remedial courses departs from the applicable sanctions enumerated by the Law . . . ." *See id.* at ¶ 160.

[7] Plaintiff contends that "Dr. Sheridan, negligently . . . submitt[ed] Plaintiff to an unjustified procedure, and by presenting her with the option of an agreement or the immediate shut down of her practice, [he] inflicted upon Plaintiff emotional distress and caused upon her a permanent injury as well as permanent damage." *See* Dkt. No. 21 at ¶ 164. Furthermore, Plaintiff asserts that Dr. Parker and Dr. Konys negligently inflicted emotional distress upon Plaintiff "by submitting Affidavits riddled with inaccuracies and invented facts." *Id.* at ¶ 165.

caused Plaintiff to be publicly stigmatized by the media, damaging her professional reputation and resulting in a loss of business. *See id.* at ¶¶ 167-70.[8]

Finally, in her fourteenth cause of action, pursuant to 42 U.S.C. § 1985, Plaintiff alleges that Defendants engaged in a conspiracy "to deprive Plaintiff of her property . . . her license as a Dentist, her liberties to practice the profession of her choosing, her reputation as a practitioner, and her livelihood." *Id.* at ¶ 183.[9]

In Plaintiff's amended complaint, the demand for relief that she seeks is monetary compensation, as well as reinstating Plaintiff to her former position as a dentist as it existed prior to the disciplinary proceedings and her agreement to the consent order. *See id.* at 44-47. Furthermore, Plaintiff requests that the Board of Regents publicly apologize for their wrongful conduct in disciplining Plaintiff. *Id.*

### III. DISCUSSION

**A.    Plaintiff's Motion to File a Second Amended Complaint**

---

[8] Again, in her twelfth cause of action, Plaintiff alleges that she signed the consent order "under compulsion and duress," upon which the publication of the consent order led to Plaintiff being "publicly humiliated and degraded causing irreparable injury to her professional reputation, a liberty protected by the [C]onstitution, [and as a result] Plaintiff suffered a social stigma and in addition, as a result of this stigma suffered a loss of business . . . ." *Id.* at ¶ 169.

[9] Specifically, Plaintiff alleges that Defendant Catone's initiation of the summary suspension hearing "was an overt act in the furtherance of the conspiracy because the emergency basis to the summary proceedings was Patient JB's broken Palate and ruptured vein allegations created by Dr. Konys' perjury and accredited by Dr. Parker's alleged review of Dr. Konys records." *Id.* at ¶ 185. In terms of Defendant Sheridan's actions in furtherance of the alleged conspiracy, Plaintiff stated that: (1) Defendant Sheridan "fail[ed] to provide the charges and to state concisely the material facts of the alleged professional misconduct to the Plaintiff concerning MH, GF, MN and KA during the ISC[;]" and (2) Defendant Sheridan proceeded to sign the consent order when he knew that "Plaintiff [had not been] provided the charges and the material facts of the alleged professional misconduct concerning AG, JD, and JB . . . ." *Id.* at ¶¶ 189-90.

According to the Federal Rules of Civil Procedure, the court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), a motion to amend a pleading should be denied "if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (other citation omitted); *accord Richardson Greenshields Sec., Inc. v. Lau*, 825 F .2d 647, 653 n.6 (2d Cir. 1987) (citation omitted). Similarly, a motion to supplement under Rule 15(d) of the Federal Rules of Civil Procedure should be denied where the supplementation is proposed in bad faith, or would be unduly prejudicial or futile. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citing *Foman*, 371 U.S. at 482). The decision whether to grant leave to amend or supplement a pleading is within the sound discretion of the court. *See id.* (citation omitted).

An amendment or supplementation of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000). Thus, if the proposed amended complaint would be subject to "immediate dismissal" for failure to state a claim, the court should not permit the supplementation. *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999). If, however, the party seeking to amend "'has at least colorable grounds for relief, justice . . . require[s]'" that the moving party's motion be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted). Futility is generally adjudicated

without resort to any outside evidence. *See, e.g., Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); *see also Jaghory v. N.Y. State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).

In the present case, on December 14, 2014, Plaintiff filed a motion to supplement and amend her amended complaint pursuant to Rule 15(a)(2) and (d) of the Federal Rules of Civil Procedure and Rule 7.1(a)(2) of the Local Rules for the Northern District of New York. *See* Dkt. No. 30.  In an affidavit submitted by Plaintiff attached to the Notice of Motion to Supplement and Amend the amended complaint, Plaintiff contends that pursuant to a conversation that she had with Mr. Hayduk, an investigator for OPD, she learned that when Mr. Hayduk had asked Plaintiff to turn over her file on patient JB, he was not aware of any complaint that JB had filed against Plaintiff, or of any investigation relating to patient JB. *See* Dkt. No. 30-1 at ¶¶ 3-5.  Thus, Plaintiff alleges that Defendants acted in bad faith in obtaining the medical records from Plaintiff's office and that such actions were unwarranted. *See id.* at ¶ 14.  Furthermore, Plaintiff contends that at the time she was asked to hand over her files on patient JB, Investigator Hayduk did not present her with a Health Insurance Portability and Accountability Act (HIPAA) form signed by patient JB, consenting to the release of his dental records to the OPD. *See id.* at ¶ 8.

Although Plaintiff contends that Investigator Hayduk admitted in a later conversation that the he never received a written complaint regarding patient JB, there is no indication that a complaint did not exist, and Plaintiff fails to set forth any allegations plausibly suggesting otherwise. *Id.* at ¶ 4.  Additionally, Plaintiff does not allege that she was forced to turn over patient JB's records.  Even assuming *arguendo* that Plaintiff could show that a complaint was not filed against Plaintiff relating to her treatment of patient JB, granting Plaintiff's motion to

supplement and amend her amended complaint would nevertheless be futile. By signing the consent order on November 2, 2010, Plaintiff agreed to the allegations of misconduct against her in her treatment of patient JB. *See* Dkt. No. 21-2 at 13-20. Plaintiff cannot now contest Defendants' investigation into her treatment of JB after she willingly provided Investigator Hayduk with JB's dental records and consented to the fact that she engaged in misconduct in her treatment of JB by signing the consent order.

Furthermore, in her affidavit attached to the notice of motion, Plaintiff asserts that Defendants "violated the HIPAA rules by illegally obtaining confidential information of two patients and thus committed professional misconduct . . . ." *Id.* at ¶ 11. Again, there is no indication that either JB, Jr. or JB failed to provide Defendants with a HIPAA consent form. However, even assuming that Defendants did violate HIPAA rules as to JB, Jr. and JB, such a violation did not implicate Plaintiff's rights, and Plaintiff cannot assert a cause of action on behalf of JB, Jr. and JB for any alleged violations of their privacy.

Moreover, aside from the argument raised by Plaintiff that Defendants violated the HIPAA rules, in her proposed second amended complaint, Plaintiff's only alteration from the previously amended complaint is removing the eighth and ninth causes of action from the complaint. *See* Dkt. No. 30-3. Thus, because the new claims in Plaintiff's proposed second amended complaint would not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the second amended complaint otherwise contains identical allegations to her current amended complaint, her motion to supplement and amend her amended complaint is denied as futile.[10]

---

[10] Plaintiff's proposed second amended complaint also includes factual allegations that allegedly contradict details contained in the specification of professional misconduct attached to

(continued...)

**B.      Standard of Review for 12(b)(1) and 12(b)(6) Motion to Dismiss**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When a party moves to dismiss a claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova*, 201 F.3d at 113 (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v.*

---

[10](...continued)
Plaintiff's application for a consent order.  *See, e.g.*, Dkt. No. 30-3 at ¶¶ 47-57.  As the Court discusses below, Plaintiff voluntarily and knowingly agreed to that specification.  As such, the proposed additions are immaterial to Plaintiff's claims and permitting amendment would be futile.

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**C.     The *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  The doctrine is grounded in the principle that 28 U.S.C. § 1257 vests jurisdiction to hear appeals from the highest court of each state exclusively in the United States Supreme Court.  *See* 28 U.S.C. § 1257.  District courts may not, therefore, adjudicate what are in essence *de facto* appeals from state court judgments.  *See Exxon*, 544 U.S. at 291–92.  The doctrine is jurisdictional, and not grounded in the same considerations as preclusion law.  *See id.* at 292–93.  The application of the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those arguments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing *Exxon*, 544 U.S. at 284).

The Second Circuit has set forth a four-pronged test to determine whether *Rooker-Feldman* precludes a federal district court from exercising jurisdiction over a claim:

> First, the federal-court plaintiff must have lost in state court.
> Second, the plaintiff must "complain[ ] of injuries caused by [a]
> state-court judgment[.]"  Third, the plaintiff must "invit[e] district
> court review and rejection of [that] judgment[ ]."  Fourth, the
> state-court judgment must have been "rendered before the district
> court proceedings commenced" – *i.e.*, *Rooker-Feldman* has no
> application to federal-court suits proceeding in parallel with
> ongoing state-court litigation.  The first and fourth of these
> requirements may be loosely termed procedural; the second and
> third may be termed substantive.

*Id.* (internal footnote omitted); *see also MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp.

2d 133, 137-38 (E.D.N.Y. 2006).[11]

In Defendants' Memorandum of Law in support of their motion to dismiss, they contend that all four requirements of the *Rooker-Feldman* doctrine have been met and thus this Court lacks subject matter jurisdiction to hear this case, which "essentially amount[s] to [an appeal] from [a] final state court decision."  *See* Dkt. No. 26-1 at 15; *Sindone v. Kelly*, 439 F. Supp. 2d 268, 271 (S.D.N.Y. 2006), *aff'd*, 254 F. App'x 58 (2d Cir. 2007).  However, Plaintiff alleges that this doctrine does not apply because the second prong of the *Rooker-Feldman* doctrine is not met.  *See* Dkt. No. 28-1 at 3.  Plaintiff alleges injury not from the judgment of the appellate court, but rather injury from the decision issued by OPD in denying her motion for reconsideration, which Plaintiff considers to be a "determination[] made by a State Administrative agency."  *See id.* (quoting *Verizon Md., Inc. V. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)).

In considering this issue of whether or not an injury is caused by the decision rendered by a state tribunal or whether the injury results from the decision of a third party, the Second Circuit has explained the second prong of the *Rooker-Feldman* doctrine in greater detail by stating that:

> a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.  Where a state-court judgment causes the challenged third-party action, any challenge to that

---

[11] *Exxon Mobil* explicitly abrogated *Moccio v. New York State Office of Court Administration*, 95 F.3d 195 (2d Cir. 1996).  *Moccio* improperly articulated the *Rooker-Feldman* doctrine as essentially co-extensive with the doctrines of *res judicata* and collateral estoppel.  *See Moccio*, 95 F.3d at 199-200 (holding that "[w]e agree that the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion" (quotation and other citations omitted)).  Though the ultimate outcome is generally identical, *Exxon Mobil* clarified that *Rooker-Feldman* is a jurisdictional doctrine, whereas *res judicata* and collateral estoppel are not.  *See Exxon Mobil*, 544 U.S. at 293.

> third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88.  Furthermore, the Second Circuit noted in *Sindone* that

> the injury in question derives from the state court decision when that judgment constitutes the 'source of the injury,' as opposed to being merely a court adjudication expressly affirming or otherwise leaving undisturbed a determination made by a third party that embodies the wrongful conduct the plaintiff asserts brought about the claimed harm in the first instance.

*Sindone*, 439 F. Supp. 2d at 272.  Thus,

> [the] causal requirement may be satisfied under two circumstances that emerge from the facts in *Hoblock* and the Second Circuit's interpretation of *Exxon Mobil*: (1) where, as in *Feldman*, the state court itself if the decision-maker whose action produces the injury the plaintiff challenges in the federal suit, or (2) where, as in *Hoblock*, the underlying harmful action complained about was actually taken by a third party in compliance with an order embodied in a judgment of a state court.

*See id.* at 272–73 (footnotes omitted).

In the present case, Plaintiff alleges in her amended complaint that the denial of her motion for reconsideration was in violation of 42 U.S.C. § 1983 because Defendant Catone was not an impartial hearing officer because of his significant involvement in the original disciplinary process of the partial suspension of Plaintiff's license.  *See* Dkt. No. 21 at ¶ 96.  Although the issue of an alleged abuse of discretion on the part of Defendant Catone in his denial of the motion for reconsideration was raised by Plaintiff in the Article 78 proceeding, according to the decision rendered by the appellate court, it does not appear that Plaintiff specifically raised the issue of Defendant Catone's impartiality in the Article 78 proceeding.  *See* Dkt. No. 21-3 at 15.  However, as is explained in *Hoblock*, the fact that Plaintiff did not raise the claim of a violation of 42 U.S.C. § 1983 based on Defendant's impartiality, "and therefore the state court never passed on the merits of this theory, does not preclude application of *Rooker-Feldman*."  *Sindone*, 439 F. Supp. at 274

(citing *Hoblock*, 422 F.3d at 86).[12]

However, the source of Plaintiff's alleged injury does not directly extend from the ruling of the appellate court in the Article 78 proceeding, but rather from the decision of Defendant Catone in his official capacity as the Professional Conduct Officer of OPD.  The denial of Plaintiff's motion for reconsideration was not caused by, nor produced by the appellate court's finding that Defendant Catone did not abuse his discretion in denying the motion for reconsideration.  *See* Dkt. No. 21-3 at 15.  The initial action to deny Plaintiff's motion for reconsideration was taken by OPD and not by a state court.  *See Sindone*, 439 F. Supp. at 274.  Furthermore, the OPD's decision to deny Plaintiff's motion for reconsideration was not prompted by an order of any state court.  Thus, the appellate court's denial of Plaintiff's appeal "merely 'ratified, acquiesced in, or left unpunished' the decision" rendered by the OPD.  *Id.* (citing *Hoblock*. 422 F.3d at 88) ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.").  Thus, the Court does not lack subject matter jurisdiction to hear Plaintiff's claims based upon the *Rooker-Feldman* doctrine.

**D.**     **Collateral Estoppel and/or Res Judicata**

The doctrine of issue preclusion, also known as collateral estoppel, "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007);

---

[12] "Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock*, 422 F.3d at 86.

*see also Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996).

> Collateral estoppel, together with its related principles, merger and
> bar, is but a component of the broader doctrine of *res judicata* which
> hold that, as to the parties in a litigation and those in privity with
> them, a judgment on the merits by a court of competent jurisdiction
> is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequ

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979) (citation omitted).[13]  The

doctrine of collateral estoppel will apply "to actions brought pursuant to 42 U.S.C. § 1983."

*Coughlin*, 88 F.3d at 59.

In order to determine whether the issue brought before the district court has met the two

requirements under the doctrine of collateral estoppel, it is important to thoroughly examine the

Article 78 proceeding.  *Id.*  The party asserting issue preclusion bears the burden of showing that

the identical issue was decided in the prior proceeding.  *See 33 Seminary LLC v. City of*

*Binghamton*, 869 F. Supp. 2d 282, 298 (N.D.N.Y. 2012).  "Issues are considered identical if a

different decision in the second suit would necessarily '"destroy or impair rights or interests

established by the first."'"  *In re Application of the Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir.

1989) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).  "The burden of proof on the

full and fair opportunity' requirement rests with the party opposing collateral estoppel."  *See Fludd*

*v. Fischer*, 568 F. App'x 70, 72 (2d Cir. 2014) (citing *Schwartz v. Pub. Adm'r of Cnty. of Bronx*, 24

N.Y.2d 65, 73 (1969)).

> To determine whether the first action provided a full and fair
> opportunity to litigate requires consideration of: the nature of the
> forum and the importance of the claim in the prior litigation, the
> incentive and initiative to litigate and the actual extent of litigation,
> the competence and expertise of counsel, the availability of new

---

[13] "Collateral estoppel is a corollary to the doctrine of *res judicata*; it permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided."  *Lopez*, 46 N.Y.2d at 485 (citing *Statter v. Statter*, 2 N.Y.2d 668 (1957)).

evidence, the differences in the applicable law and the foreseeability
of future litigation.

*Shell v. Brun*, 362 F. Supp. 2d 398, 400 (W.D.N.Y. 2005) (quoting *Ryan*, 62 N.Y.2d at 501).

"The preclusive effect of a New York judgment in a subsequent federal action is

determined by New York law." *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 WL 141053, *6

(S.D.N.Y. Jan. 22, 2007) (internal quotation marks and citations omitted). Accordingly, this

Court's analysis "is governed by New York State law, which has adopted a transactional approach

to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated

claim even if the later claim is based on different legal theories or seeks dissimilar or additional

relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage Coll.*, 54

N.Y.2d 185, 192-93 (1981)).

> "Under the doctrine of res judicata, a final disposition on the merits
> bars litigation between the same parties of all other claims arising
> out of the same transaction or out of the same or related facts, even if
> based upon a different theory involving materially different elements
> of proof. The rule applies not only to claims litigated but also to
> claims that could have been raised in the prior litigation."

*Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009) (quotation and other citation omitted).

### 1.    *Res Judicata*

Here, Defendants do not argue that res judicata requires dismissal of Plaintiff's claims, nor

would such an argument prevail. The "bar against later claims based upon the same cause of

action is . . . subject to certain limitations, one of which is that it will not be applied if the initial

forum did not have the power to award the full measure of relief sought in the later litigation."

*Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986). Where the Article 78 proceeding could

not award the full measure of relief sought in a later action arising out of the same facts, including

damages for civil rights violations, the Article 78 proceeding "[does] not bar a later civil rights

claim even where . . . it is based upon the same cause of action as the Article 78 proceeding." *Id.* at 282. Accordingly, because Plaintiff could not have recovered damages for Defendants' alleged civil rights violations in her Article 78 proceeding before the Appellate Division, Plaintiff's claims are not barred by res judicata.

### 2.    *Collateral Estoppel*

However, in the present case, Plaintiff raised a number of identical issues before the Appellate Division in the Article 78 proceeding requesting review of Defendant Catone's denial of her application for reconsideration. *See* Dkt. No. 21-3 at 13–20. As an initial matter, Plaintiff's argument that she did not have a full and fair opportunity to litigate the issues before the Appellate Division is unavailing. Plaintiff argues that the Article 78 proceeding was limited to resolving Defendant Catone's discretion to deny her request for reconsideration without referring the request to the Board of Regents. *See* Dkt. No. 28-1 at 7. This argument ignores that beyond affirming Defendant Catone's discretion to make the reconsideration determination, the Appellate Division also examined the merits of Plaintiff's various claims as to the invalidity of the consent order and underlying disciplinary proceedings. Furthermore, while Plaintiff contends that the record before the Appellate Division case was limited by N.Y.C.P.L.R. § 5526, Plaintiff does not explain how this provision limited her ability to present evidence, and the appellate record contained the bulk of evidence Plaintiff has provided to this Court. *See* Dkt. No. 26-3 at 4-134.[14] Finally, while Plaintiff argues that she was disadvantaged by proceeding *pro se* before the Appellate Division, she

---

[14] Plaintiff claims that she was prohibited from offering evidence to the Appellate Division of her counsel's request for an adjournment of the October 20, 2010 summary suspension hearing date, Ms. Carlson's letter regarding the proposed consent order, and Plaintiff's own records pertaining to patients MN, KA, and JB. *See* Dkt. No. 9-10. Plaintiff provides no explanation as to why she could not proffer this evidence to the Appellate Division, as all such evidence predates the initiation of the Article 78 proceedings and thus does not constitute new evidence.

acknowledges that counsel prepared her Article 78 petition and does not identify any proceedings at which her ability to litigate her claims was compromised by her *pro se* status. *See* Dkt. No. 28-1 at 7. Therefore, the Court finds that Plaintiff had a full and fair opportunity to litigate her claims before the Appellate Division, and the application of collateral estoppel to the claims raised in that litigation are justified.

In the Article 78 proceeding brought against Defendant Catone, the basis for Plaintiff's request for review by the appellate court was her allegations that Defendants were "bias[ed] and [had a] lack of expertise [as] the doctors who rendered opinions of her work in connection with the disciplinary investigation," that the consent order was involuntary, that she was coerced into signing the consent order, and that the disciplinary action that was taken against her was discriminatory in nature as it was based on her race and gender. *See* Dkt. No. 21-3 at 15-16. Based on Plaintiff's submission to the appellate court and pursuant to the court's review of the materials, the appellate court found that Plaintiff failed to provide any evidence that she was entitled to reconsideration and thus affirmed the order of Defendant Catone denying her motion for reconsideration. *See id.*

Now, in Plaintiff's amended complaint, she again alleges that she was forced into signing the consent order in order to avoid an emergency suspension of her license. *See* Dkt. No. 21 at ¶¶ 110, 164. This is an issue that was previously addressed by the Third Department in the Article 78 proceeding. *See* Dkt. No. 21-3 at 15. Specifically, the appellate court noted that it was Plaintiff, along with her attorney, who requested an application of a consent order from OPD. *See id.* By signing the consent order, Plaintiff acknowledged and agreed to all of the language and information contained within the order, and represented "that she sought the consent order of her own free will and without 'duress, compulsion, or restraint of any kind or manner.'" *Id.*

Furthermore, as the appellate court noted, Plaintiff "was represented by counsel at the time, rendering it 'reasonable to charge her with making an informed and voluntary assent to the terms of the consent order.'"  *Id.* (quoting *Matter of Saraf*, 223 A.D.2d 836, 838 (3rd Dep't 1996)).

Moreover, the appellate court stated that Defendant Catone's actions were justified under 8 N.Y.C.R.R. § 17.9(a), which states that "[i]f the director of the Office of Professional Discipline or that officer's designee believes that the public health, safety or welfare imperatively requires emergency action . . . the director . . . may make an application, on behalf of the department, to the Board of Regents for the summary suspension . . . ."  Therefore, Defendant Catone was authorized in presenting Plaintiff with the option of either submitting an application for a consent order or a summary suspension hearing would be initiated.  Plaintiff's contention that "the issue as to the legality of the Consent Order itself was never raised before the Appellate Division" is therefore unavailing.  Dkt. No. 28-1 at 6.  Thus, because this issue was already addressed by the appellate court, a court of competent jurisdiction, this Court is barred by the doctrine of collateral estoppel from rehearing this issue.  *See Gramatan*, 46 N.Y.2d at 485.

In her amended complaint, Plaintiff also again alleges that the disciplinary process initiated against her by Defendant Catone, as well as the sanctions that were imposed, were discriminatory in nature in that they were based upon her gender and race, and thus violated her due process rights and her rights under the Equal Protection Clause.  *See* Dkt. No. 21 at ¶¶ 98, 108, 139, 159. Plaintiff had alleged this same cause of action against Defendant Catone in her Article 78 proceeding, which the appellate court found to be without merit.  *See* Dkt. No. 21-3 at 15.[15]  Due to

---

[15] The "petitioner did not present any evidence to substantiate her claims that the disciplinary action taken against her was the product of discrimination based on race or gender." *See Matter of Reddy*, 105 A.D.3d 1164, 1166 (3rd Dep't 2013); *see also White v. N. Y. State Bd. for Prof'l Med. Conduct*, 277 A.D.2d 608, 609 (3d Dep't 2000) ("The record demonstrates that

(continued...)

the fact that Plaintiff had a full and fair opportunity to litigate these issues in the prior state court

proceeding, this Court is barred by the doctrine of collateral estoppel from hearing these claims.[16]

Plaintiff's amended complaint also alleges under 42 U.S.C. § 1983 that Defendant Catone

abused his discretion by denying her motion for reconsideration due to his inability to be impartial

and his failure to provide Plaintiff with the charges against her, thus causing the disciplinary

process against her to be an individualized proceeding.  *See* Dkt. No. 21 at ¶¶ 96-98, 118, 120.

Plaintiff was already provided with a full and fair opportunity to litigate these claims against

Defendant Catone in the state court proceeding.  *See* Dkt. No. 21-3 at 15.  The appellate court

found that pursuant to 8 N.Y.C.R.R. § 3.3(f), Defendant Catone was permitted to review Plaintiff's

motion for reconsideration and thus did not abuse his discretion in denying the motion.  *See id.*

According to  8 N.Y.C.R.R. § 3.3(f), "the director of the Office of Professional Discipline . . . in

the exercise of discretion, shall determine whether the application warrants referral to the Board of

Regents for its determination based upon any of the grounds set forth by the applicant as the basis

for the application."  Furthermore, under this subsection, Defendant Catone was only required to

refer Plaintiff's application for reconsideration to the Board of Regents if she was able to show

"that the determination was based on an error of law, or that there is new and material evidence

which was not previously available, or that circumstances have occurred subsequent to the original

---

[15](...continued)

petitioner's license was revoked not as the result of any bias or discrimination but based on his professional misconduct as established by the consent order . . . .") (citations omitted).

[16] To the extent that Plaintiff presents an additional claim in her amended complaint of discrimination based on national origin, whereas the appellate court only addressed discrimination based on race and gender, the Court finds that this claim fails for the same reasons as Plaintiff's other claims of discrimination.  Notwithstanding her conclusory allegations that the sanctions proposed by Defendant Catone were related to Plaintiff's national origins, Plaintiff has failed to allege any facts suggesting that her national origin factored into Defendants' pursuit of professional discipline or the ensuing resolution by consent order.

determination which warrant a reconsideration of the measure of discipline." 8 N.Y.C.R.R. §
3.3(f). Defendant Catone did not find that Plaintiff presented any such viable grounds in her
application for reconsideration and thus denied reconsideration. *See* Dkt. No. 21-3 at 10. The
appellate court found that Defendant Catone did not abuse his discretion in rendering such a
decision. *See id.* at 15 ("[W]e cannot find that [Catone] abused his discretion in denying
reconsideration of the disciplinary determination."). Thus, the Court is also barred from hearing
claims as to Defendant Catone's alleged impartiality and/or abuse of discretion, as these claims are
barred by the doctrine of collateral estoppel.[17]

**E.      42 U.S.C. § 1983**

Section 1983 of title 42 imposes liability for "conduct which 'subjects, or causes to be
subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo
v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct
deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or
omissions attributable to each defendant must be the proximate cause of the injuries and
consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881
(S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, *reh. denied*, 445 U.S. 920 (1980)).
As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection
between the acts or omissions of each defendant and any injury or damages he suffered as a result
of those acts or omissions. *See id.* (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410
(1979)) (other citation omitted).

### 1.      *Due Process*

---

[17] Plaintiff's first, second, third, and tenth causes of actions in this matter are therefore
barred by collateral estoppel.

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). "Property rights arise from '"an independent source such as state law," [with] federal constitutional law determin[ing] whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'" *Pilchen v. City of Auburn*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)) (other citation omitted). The "essential principle of [procedural] due process is that a deprivation of life, liberty, or property [should] 'be preceded by notice and [an] opportunity for [a] hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). However, "[w]here there is a meaningful postdeprivation remedy, there is no due process violation." *Gudema v. Nassau Cnty.*, 163 F.3d 717, 724 (2d Cir. 1998) (citing *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984)).

In the present action, Plaintiff alleges in her fifth, sixth,[18] eighth, and ninth causes of action that Defendant Sheridan violated her due process rights under 42 U.S.C. § 1983 and "the terms of the 14th Amendment of the [United States] [C]onstitution." *See* Dkt. No. 21 at ¶¶ 126-40, 145-54. Plaintiff contends that based on Defendant Sheridan's involvement in the disciplinary proceedings as a member of the State Board for Dentistry, the temporary and partial suspension of her license, the three-year probationary period, and the $1,000 fine imposed on Plaintiff, Defendant Sheridan

---

[18] To the extent that Plaintiff's sixth cause of action alleges an Equal Protection claim based on Defendant Sheridan proposing unjustifiable sanctions based on Plaintiff's ethnicity and/or national origin, whether Plaintiff's factual allegations support such a claim is discussed below.

deprived Plaintiff of her property interest in her business by subjecting her to an undue and unjust disciplinary process. *See id.* Specifically, in Plaintiff's fifth, eighth, and ninth causes of action, Plaintiff alleges that Defendant Sheridan "failed to provide [Plaintiff with] the charges [against her] and to state concisely the material facts of the alleged professional misconduct . . . [and] [b]y doing so he deprived Plaintiff the right to explain her position and present her defense." *See id.* at ¶¶ 133, 147, 152. Plaintiff also contends that Defendant Sheridan presented a conflict of interest as a member of the State Board for Dentistry during the investigation and the ISC as he "was at the time of the events and still is Plaintiff's direct competitor: [because] Dr. Sheridan's office[] is located in close proximity to Plaintiff's practice, within [a] 3.2 mile radius [and is] geographically the closest competitor of Plaintiff's [o]ffice." *Id.* at ¶ 130. Thus, Plaintiff argues that Defendant Sheridan should have recused himself from Plaintiff's disciplinary proceedings pursuant to N.Y. Public Officers Law § 74. *See id.* at ¶ 129.

Plaintiff's claim that Defendant Sheridan's involvement in the temporary and partial suspension of her license violated her due process rights because Defendant Sheridan presented a conflict of interest is without merit. Defendant Sheridan's role with the State Board for Dentistry and his involvement in the disciplinary actions taken against Plaintiff did not present any conflict of interest that affected Plaintiff's due process rights, as Plaintiff consented to the charges contained in the consent order, and thus Defendant Sheridan's purported conflict of interest had no effect on the outcome of Plaintiff's disciplinary proceedings. *See* Dkt. No. 21-2 at 13-20. Furthermore, Plaintiff does not allege that she objected to Defendant Sheridan's involvement as a member of the State Board for Dentistry when she became aware of his involvement at the ISC. *See* Dkt. No. 21 at ¶ 20.

Plaintiff also contends that due to Defendant Sheridan's withholding of information from

Plaintiff pertaining to the charges against her and the material facts, Plaintiff was deprived of her property interest in her license to practice dentistry without due process.  *See id.* at at ¶¶ 126-40, 145-54.  Although it is clear that Plaintiff has a legitimate property interest in her medical license to practice dentistry, *see Charry v. Hall*, 709 F.2d 139, 145 (2d Cir. 1983) (recognizing that a professional license is a constitutionally protected vested property right), Plaintiff was presented with an opportunity for an appropriate hearing to contest the deprivation, *see* Dkt. No. 21-1 at 9 (informing Plaintiff of suspension hearing scheduled for October 28, 2010).  Notwithstanding this opportunity, Plaintiff voluntarily applied for and subsequently signed a consent order, whereupon she knowingly waived her opportunity to contest the charges against her as provided in the consent order.  *See* Dkt. No. 21-2 at 13-20.

At the time that Plaintiff signed the consent order, thus agreeing to the charges, the relevant facts, and the penalties to be imposed, Plaintiff was represented by counsel and was thus made fully aware of the consequences of signing the consent order.  *See* Dkt. No. 21 at ¶¶ 31-35, 38; Dkt. No. 21-2 at 13 ("I do not contest the aforesaid specification of professional misconduct, charging me with practicing the profession of dentistry with negligence on more than one occasion (errors in the treatment of seven patients including extractions and root canals).").  Plaintiff entered into the consent order with full knowledge and understanding that by consenting to the charges contained within the order, she was waiving her right to a formal disciplinary hearing, as she had previously been made aware by Defendant Catone.  *See* Dkt No. 21 at ¶¶ 31-38.  Plaintiff cannot now argue that Defendant Sheridan violated her due process rights by failing to provide her with the charges in order for her to present a defense when Plaintiff voluntarily agreed not to contest the charges against her.

The Court also notes that Plaintiff's allegations that Defendant Sheridan did not properly

apprise her of the charges against her are undermined by her own acknowledgment that Defendant Sheridan "accused Plaintiff of deviating from the professional standard . . . in four cases[:] MH, MN, GF, AG" at the ISC.  Dkt. No. 21 at ¶ 22.  Furthermore, any uncertainty as to the charges against Plaintiff was resolved by the verified petition attached to the summary suspension hearing notice, which Plaintiff received before agreeing to apply for a consent order.  *See* Dkt. No. 21-1 at 13-17.

Thus, Plaintiff has failed to show a violation of her due process rights.  Plaintiff's claims under 42 U.S.C. § 1983 that Defendant Sheridan violated her due process rights – Plaintiff's fifth, eighth, and ninth causes of action – are therefore dismissed.

### 2. *Equal Protection Clause*

In Plaintiff's sixth, seventh, and tenth causes of action, she contends that Defendant Sheridan subjected her to individualized proceedings based on her race and national origin and proposed sanctions at the ISC that were "excessive, unjustified, illegal, and shock[ed] the conscience," which were motived by her ethnicity.  *See* Dkt. No. 21 at ¶¶ 142, 155-62.  The Equal Protection Clause requires the government to treat all similarly situated people alike.  *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "To plead an equal protection violation, plaintiffs must plausibly assert that (1) they were treated differently from other similarly-situated individuals and (2) such selective treatment was based on impermissible considerations such as race or religion." *Kajoshaj v. N.Y. City Dep't of Educ.*, 543 F. App'x 11, 15 (2d Cir. 2013) (citation omitted).  "Where . . . plaintiffs are counseled, and the pleadings indicate more-plausible, non-discriminatory explanations for defendants' complained-of actions, a bare allegation of discriminatory animus is not enough to render an equal protection claim plausible." *Id.* at 15-16

(citing *Iqbal*, 556 U.S. at 678).

As an alternative to showing membership in a constitutionally protected class, a plaintiff may proceed under the Equal Protection Clause as either a "class of one," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted), or under the theory of "selective enforcement," *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).  To prevail on a "class of one" equal protection theory, a plaintiff must show that the defendant "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (quoting *Olech*, 528 U.S. at 564).[19]  The plaintiff's burden on "class of one" claims is "extremely high," and a plaintiff cannot prevail absent a *prima facie* showing that he is "identical in all relevant respects" to the individuals with whom he compares himself.  *Id.* (citation omitted).  Specifically, the plaintiff must establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy, and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quotation and

---

[19] The Court notes that *Neilson* involved the application of the class-of-one equal protection theory in the public employment context.  Subsequent to the decision in *Neilson*, however, the Supreme Court explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  Thus, the Second Circuit "overrule[d] [*Neilson*] . . . to the extent that it conflicts with the holding of *Engquist*."  *Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).  Nevertheless, the Second Circuit's discussion in *Neilson* regarding the level of similarity necessary to support a class-of-one equal protection claim has not been overruled.  *See Smith v. Fischer*, No. 9:07-CV-1264, 2009 WL 632890, *10 n.30 (N.D.N.Y. Feb. 2, 2009) (quotation and other citations omitted).

footnote omitted).[20]

To prevail on a "selective enforcement" Equal Protection claim, a plaintiff must prove "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel*, 232 F.3d at 103 (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). In the selective enforcement context, "[t]he test [for similarly situated] is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (quoting *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002)).

Plaintiff appears to allege equal protection violations based on her national origin and under the "class of one" and selective enforcement theories. As to Plaintiff's claims that Defendant Sheridan proposed certain sanctions at the ISC "based on Plaintiff's ethnicity or national origin," Dkt. No. 21 at ¶ 139, such "bare allegation[s] of discriminatory animus [are] not enough to render an equal protection claim plausible." *Kojashaj*, 543 F. App'x at 15-16. Plaintiff's amended complaint contains no specific factual support for her allegations that the settlements proposed at

---

[20] Although the Supreme Court used the words "similarly situated" to describe the standard for a "class of one" claim, it is not the same standard of "similarity" as used in a protected-class discrimination claim. *Neilson*, 409 F.3d at 104-05. The difference comes from the purpose of the showing. *See id.* In a claim of discrimination based on group status, the treatment of persons in similar circumstances is offered to "provide, along with other evidence, an evidentiary inference of the use of particular impermissible factors," whereas in a "class of one" claim, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Id.* (citation omitted).

the ISC were motivated by her national origin outside of the fact that "the two full academic years classes[] proposed by Dr. Sheridan[] are the classes needed for non-American Doctors to be accredited and authorized to practice." Dkt. No. 21 at ¶ 39. This fact is not sufficient to plausibly state a claim based on discriminatory animus, especially in light of the plausible non-discriminatory explanations for Defendant Sheridan's proposed settlement indicated by Plaintiff's pleading, such as Plaintiff's deviations from professional dental standards. *See* Dkt. No. 21 at ¶ 22.

As to Plaintiff's "class of one" and selective enforcement theories, Plaintiff fails to set forth any evidence that the disciplinary proceedings that she was subjected to by Defendant Sheridan in his role as a member of the State Board for Dentistry were different than other similarly situated individuals. In order for Plaintiff to show that she was subjected to an individualized proceeding, and thus treated differently from similarly situated individuals, she would have to allege instances where Defendant Sheridan treated other dentists accused of professional misconduct in a manner different from the treatment of Plaintiff. *See Neilsen*, 409 F.3d at 104; *Mosdos*, 815 F. Supp. 2d at 693. Plaintiff has failed to set forth any such allegations. Nowhere within the pleadings does Plaintiff even make a reference to the professional discipline of other dentists by OPD.[21] Furthermore, the record establishes that the disciplinary actions that were taken by Defendants were permitted by and in accordance with 8 N.Y.C.R.R. § 3.3, and thus were not individualized proceedings.

---

[21] In apparent recognition of this deficiency, Plaintiff attached exhibits to her response in opposition to Defendants' motion to dismiss that purportedly display the outcome of disciplinary proceedings against other dentists between June 2008 and November 2010. *See* Dkt. No. 28 at 23-33  The exhibits are not referenced in or attached to Plaintiff's amended complaint or proposed second amended complaint and are thus outside the scope of the Court's review on a Rule 12(b)(6) motion. *See Mangiafico*, 471 F.3d at 398. Moreover, while Plaintiff appears to suggest that the ultimate disposition of her disciplinary proceedings violated the Equal Protection Clause, Plaintiff voluntarily consented to that disposition by applying for the consent order.

Thus, Plaintiff's claims pursuant to 42 U.S.C. § 1983 that Defendant Sheridan violated her rights under the Equal Protection Clause are insufficient.  Plaintiff's sixth, seventh, and tenth causes of action are therefore dismissed.

**E.**    **Stigma Plus Doctrine**

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983."  *Patterson v. City of Utica*, 370 F.3d 322, 330-31 (2d Cir. 2004) (citations omitted).  However, under the stigma plus doctrine, "a claim [can be] brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d. Cir. 2003) (citations omitted).  "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Doe v. Dep't of Pub. Safety ex. rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001)).  Thus, under the stigma plus doctrine, the plaintiff must show two distinct deprivations: a "'loss of reputation'," as well as "the deprivation of [the] plaintiff's property."  *See id.* (quoting *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999)) (other citation omitted).

In the present case, Plaintiff contends that Defendants caused her injury under the stigma plus doctrine through the publication of the signed consent order and the role that Defendants played in its manifestation.  *See* Dkt. No. 21 at ¶¶ 168-70.  Additionally, Plaintiff asserts a second cause of action under the stigma plus doctrine against Defendant Catone based on statements that he made to the *Syracuse Post Standard*, which were published on December 27, 2010.  *See id.* at

¶¶ 172-80.  Plaintiff asserts that as a result of the publication of the consent order, as well as the statements made by Defendant Catone to the *Syracuse Post Standard*, she suffered an 80 percent loss of her business, "patients cancelling their appointments and requesting transfer of their records," and "some other negative consequence."  *See id.* at ¶¶ 169-70, 178-79.

Based on these assertions, Plaintiff has failed to allege a viable claim under federal law.  When Plaintiff signed the consent order application, she acknowledged and agreed to all of the terms and conditions provided therein.  *See* Dkt. No. 21-2 at 15.  Specifically, Plaintiff agreed to language that explicitly stated "I understand that if and when the Board of Regents grants this application, the entire application shall become a matter of public record."  *See id.* (emphasis omitted).  Plaintiff cannot now maintain a cause of action under the stigma plus doctrine resulting from any negative consequences that she has experienced based on the publication of the consent order when she explicitly consented to and acknowledged that all of the information contained within the consent order application was true, and further, that all such information was to become public record.

Furthermore, regarding the statements made by Defendant Catone to the *Syracuse Post Standard*, none of the statements that Plaintiff refers to in her amended complaint are false.  *See* Dkt. No. 21-3 at 37.  In the published article, when asked about what practices Plaintiff was permitted to conduct after the partial suspension of her license, Defendant Catone responded "' . . . clean peoples teeth and fill them, but I don't think she can do much beyond that,'" which was a factually accurate representation of Plaintiff's limited role as a dentist at that time due to the partial suspension of her license.  *See id.*  Defendant Catone's other published statements similarly stated factually true information as to the disciplinary proceedings instituted against Plaintiff and their outcome.  *See id.* at 37-38 (describing the voluntary settlement of the OPD's charges against

Plaintiff).

Assuming *arguendo* that Defendant Catone's statements constituted defamation, Plaintiff has also failed to allege that she has suffered a loss of a tangible property interest necessary to invoke the stigma plus doctrine. *See Sadallah*, 383 F.3d at 38-39. Alleged harms to one's business "are not 'in addition to' the alleged defamation, but rather are direct 'deleterious effects' of that defamation." *Id.* at 39 (citations omitted). Thus, Plaintiff's failure to show any "deprivation of a legal right or status," is insufficient to meet the requirements of the stigma plus doctrine and these claims must be dismissed. *Id.*[22] Plaintiff's twelfth and thirteenth causes of action are therefore dismissed.

## G.    42 U.S.C. §§ 1983, 1985 Claim of Conspiracy

In Plaintiff's fourteenth cause of action, she contends that Defendants conspired "to deprive Plaintiff of her property, i.e., her license as a Dentist, her liberties to practice the profession of her choosing, her reputation as a practitioner, and her livelihood. In other words, to eradicate her practice," in violation of Plaintiff's constitutional rights. Dkt. No. 21 at ¶ 183. "'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. *See Malsh v. Austin,* 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citing *Roesch v. Otarola*, 980 F.2d 850, 854 (2d Cir. 1992) (other citation omitted). Thus, if a plaintiff cannot

---

[22] The Court notes that the partial suspension of Plaintiff's professional license necessarily predated the publication of the consent order and Defendant Catone's statements and therefore cannot constitute the deprivation of a legal right or status necessary to state a stigma plus claim.

sufficiently allege a violation of his rights, it follow that he cannot sustain a claim of conspiracy to violate those rights. *See id.* In the present matter, as stated above, Plaintiff has failed to establish that Defendants violated her constitutional rights. Plaintiff's § 1983 conspiracy claim therefore must be dismissed. *See Roesch*, 980 F.3d at 854.

Despite appearing to plead the elements of a § 1983 action for conspiracy, Plaintiff labels her conspiracy cause of action as a conspiracy under 42 U.S.C. § 1985. In order to state a claim for a purely private conspiracy under § 1985(3), Plaintiff must show "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal citations omitted). Plaintiff fails to posit any plausible allegations that Defendants were acting in furtherance of discriminatory animus rather than in furtherance of their interest in protecting the safety of the public.

Based on the foregoing, the Court finds that Plaintiff's conspiracy claims are precluded under 42 U.S.C. § 1983 as Plaintiff has failed to allege any violation of her constitutional rights and under 42 U.S.C. § 1985 because Plaintiff failed to plausibly allege that Defendants were motivated by discriminatory animus. As such, the Court grants Defendants' motion to dismiss insofar as it seeks dismissal of Plaintiff's conspiracy claims, and dismisses Plaintiff's fourteenth cause of action.

## H.     Quasi-Judicial Immunity

As an alternative ground for dismissal, Plaintiff's monetary claims against Defendants Catone and Sheridan relating to their involvement in the partial suspension of her license and the imposition of the three-year probationary period and the $1,000 fine pursuant to the consent order

are barred by the doctrine of quasi-judicial immunity. "The doctrine of judicial and quasi-judicial immunity is, in the main, a creation of the U.S. Supreme Court with regard to federal claims and thus a federal law doctrine." *Gross v. Rell*, 585 F.3d 72, 79 (2d Cir. 2009). However, "the federal common law on judicial immunities applies even to state officials when they are sued in federal court on federal claims." *Id.* at 80 (emphasis and citations omitted). In asserting a defense of quasi-judicial immunity, "the U.S. Supreme Court has set forth a 'functional' test that is binding on this court on matters of federal law." *Id.* at 81 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201-02 (1985)). "Whether non-judicial officers merit quasi-judicial absolute immunity depends upon the 'functional comparability of their judgments to those of the judge.'" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20 (1976)).

> The functional comparability analysis is made by considering the following six factors, among others, characteristic of the judicial process: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal."

*Id.* (quoting *Cleavinger*, 474 U.S. at 202).

"'Under the doctrine of quasi-judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature.' Accordingly, quasi-judicial immunity bars plaintiff's monetary claims . . . . However, neither judicial immunity nor quasi-judicial immunity bars a claim for prospective injunctive relief." *Truong v. McGoldrick*, No. 06 Civ. 1430, 2006 WL 1788960, at *4 (S.D.N.Y. June 27, 2006) (quoting *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996)). Thus, in *Truong*, the court found that the members of an attorney disciplinary committee were entitled to quasi-judicial immunity for the plaintiff's

monetary claims based on the committee's initiation of professional misconduct proceedings against the plaintiff and recommendation that the plaintiff be disbarred.  *See id.*; *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 146 ("[O]ther courts have found quasi-judicial immunity to be appropriate in connection with the revocation decisions of medical and other state licensing board regimes." (citations omitted)).

In the present matter, Defendant Catone, as the Director for the Office of Professional Discipline, and Defendant Sheridan, as a member of the State Board for Dentistry, are protected by the doctrine of quasi-judicial immunity as they were acting as "administrative officials performing discretionary acts of a judicial nature."  *Id.*  Defendant Catone and Defendant Sheridan were acting under the authority vested in them pursuant to 8 N.Y.C.R.R. § 3.3 and  N.Y. Public Officers Law § 74 in the partial suspension of Plaintiff's license and performed acts of a judicial nature similar to the attorney disciplinary proceedings entitled to quasi-judicial immunity in *Truong*.  Accordingly, Plaintiff's monetary claims against Defendants Catone and Sheridan are subject to dismissal on this ground.

## I.      Negligent Infliction of Emotional Distress

Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states that,

> in any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction
> over all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same
> case or controversy under Article III of the United States
> Constitution.  Such supplemental jurisdiction shall include claims
> that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  Pursuant to section 1367(c)(3), the Court may only exercise its discretion to decline to exercise supplemental jurisdiction when all original jurisdiction claims are dismissed as

to all of the defendants. *See id.* § 1367(c)(3); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (vacating dismissal of state-law claims against a defendant where section 1983 claim remained against other defendants) (citation omitted); 16 *Moore's Federal Practice – Civil* § 106.66(1) (3d ed.) ("Subsection (c)(3) requires that *all* claims over which it has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims.  This refers to all claims in the case, not just those claims asserted against a particular defendant.  If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present.") (citations omitted).  Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted).  The Second Circuit has held that "'if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

    Since the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over Plaintiff's state-law claims of negligent infliction of emotional distress and dismisses Plaintiff's fourth and eleventh causes of action pursuant to 28 U.S.C. § 1367(c)(3).  The Court will therefore dismiss Plaintiff's amended complaint in its entirety.

### IV. CONCLUSION

    After carefully reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

    **ORDERS** that Defendants' motion to dismiss (Dkt. No. 26) is **GRANTED**; and the Court

further

      **ORDERS** that Plaintiff's amended complaint is **DISMISSED** with prejudice; and the Court further

      **ORDERS** that Plaintiff's motion to amend her complaint is **DENIED**; and the Court further

      **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

      **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 31, 2015
      Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**